# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

CHRISTEN L. ARNOLD, Administrator of the )
Estate of Thomas E. Arnold, )
　)
　　　　　　Plaintiff, )
　)
v. ) Case No. 07-CV-561-GKF-FHM
　)
ONEOK, INC. LONG-TERM DISABILITY PLAN, )
　)
　　　　　　Defendant. )

## OPINION AND ORDER

Plaintiff Christen L. Arnold, as the Administrator of the Estate of Thomas E. Arnold brings this suit under the Employee Retirement Income Security Act, 29 U.S.C. §1001, *et seq.* ("ERISA"), seeking judicial review of the decision to deny disability benefits under a Long-Term Disability Plan ("Plan") provided by ONEOK, Inc.

## I. Background

**A. Procedural History**

Thomas E. Arnold ("Arnold") applied for Long Term Disability ("LTD") benefits under the Plan on October 4, 2004. (AR 118)[1]. On November 14, 2004, a physician reviewing the medical records in the case opined that Arnold was "totally disabled from all occupations and is not a candidate for rehabilitation." (AR 123). The Long Term Disability Plan Committee approved Arnold's application for benefits on December 10, 2004. (AR 111).

---

[1]References to AR refer to the Amended Joint Submission of the Administrative Record, found at Dkt. #16. Page numbers given refer to the Bates numbering in the lower right hand corner of each page.

Arnold applied for Social Security Disability ("SSD") and was denied on November 2, 2004. (AR 067). Arnold applied for reconsideration of this decision but it was upheld on August 26, 2005. (*Id.*). ONEOK terminated Arnold's LTD benefits effective October 1, 2005, after Arnold informed them that he had been denied SSD on reconsideration. (AR 067). Arnold's subsequent administrative appeal to the LTD Appeal Committee was denied. (AR 062, 155). Arnold then filed this suit.[2]

Arnold sought review of the Social Security Administration's denial of benefits by an Administrative Law Judge ("ALJ"). The ALJ reversed the denial and awarded Arnold Social Security Disability benefits on February 24, 2006. (Answer to Complaint, Dkt. #7, p.3). The ALJ found that Arnold had been disabled since April 15, 2004. (*Id.*) Arnold forwarded the ALJ's decision to the ONEOK Plan. (*Id.*) ONEOK refused to revise its denial of LTD benefits on June 15, 2006. (*Id.*) Although the court normally confines its review to the materials in the Administrative Record, it may consider new evidence that is 1) necessary, 2) could not have been submitted during the administrative appeal process, 3) is not cumulative, and 4) is not simply better evidence than that submitted during the claims review. *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1309 (10th Cir. 2007). Evidence that the ALJ reversed the denial of Arnold's SSD benefits is necessary evidence of whether or not Arnold could qualify for Social Security Disability, it is evidence that became available only after Arnold's administrative appeal, it is not cumulative evidence, and it is not simply better evidence than other evidence considered during the administrative appeal process. Therefore, the court finds that it may consider evidence that an ALJ awarded Arnold SSD benefits.

---

[2]Mr. Arnold passed away in late 2010, and Christen L. Arnold, as the administrator of his estate, has been substituted as the proper party for this action. (Dkt. #31).

## B. The LTD Plan

Under Section 2.30 of the LTD Plan a person qualifies for "Total Disability" if:

> "(a) during the Waiting Period and the next twenty-four (24) months of disability, any medically determinable physical or mental impairment that (1) can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than six (6) months (with such expectations to be determined by the Committee), and renders a Participant unable to perform any job within the Company which the Participant has the ability to perform with such a disability; and (b) after such twenty-four (24) month period the inability of a Participant to perform each and every duty of any occupation that qualifies the Participant for disability benefits under the Social Security Act; provided, that if the Social Security Administration denies a Participant's application for disability benefits, the Participant may file a request for reconsideration of that denial with the Social Security Administration within sixty (60) days (or other currently prescribed time period), and if the Social Security Administration allows disability benefits after reconsideration, the Participant shall be considered to have a Total Disability entitling the Participant to Disability Benefits under the Plan, subject to all of the Plan's other requirements; provided, further, that if the Social Security Administration denies disability benefits after reconsideration, Total Disability shall be deemed not to exist, and Disability Benefits under the plan will be denied and terminated."

(AR 011-012). The Plan also addresses a participant's eligibility for disability benefits. It states that:

> "If a Participant fails to make a timely application for reconsideration of denial of disability benefits by the Social Security Administration, the Participant's Disability Benefits under the Plan will be denied and terminated. In the process of qualification for Total Disability status, a Participant must file for reconsideration of an initial denial by the Social Security Administration promptly, take steps to complete the reconsideration within a reasonable time, and provide the Company with copies of all documents and determinations related to the Social Security Administration's actions."

(AR 014).³

The Plan reserves to the ONEOK LTD Committee the right to "construe and interpret the Plan and determine all questions arising in its operation." (AR 021) It also reserves the right to "make all determinations and interpretations, in its discretion, with respect to administration of the Plan." (AR 021). The LTD Committee and the Appeal Committee were composed entirely of employees of ONEOK or of its subsidiaries. (AR 148-150).

## II. Standard of Review

The decision to deny benefits is reviewed under an arbitrary and capricious standard when the plan provider explicitly reserves discretionary authority to interpret the terms of the plan. *Trujillo v. Cyprus Amax Minerals Co. Retirement Plan Comm.*, 203 F.3d 733, 736 (10th Cir. 2000). "[W]hen reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious." *Weber v. G.E. Group Life Assur. Co.*, 541 F.3d 1002, 1011 (10th Cir. 2008) (quoting *Flinders v. Workforce Stabilization Plan of Phillips Petro. Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007)). If the plan administrator is operating under a conflict of interest, however, the court maintains its arbitrary and capricious standard of review, but must weigh the conflict of interest as a factor in determining whether the decision of the plan administrator was arbitrary and capricious. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111-12

---

³The parties also cite to the Summary Plan Description ("SPD") and the LTD application paperwork in their briefs. Although these documents may have some relevance to the parties' subjective understandings of the scope of the Plan, neither have legal influence on the terms of the Plan. "The summary is not part of and does not modify or constitute any provisions of the Long-Term Disability Plan described here, nor does it alter or affect in any way the rights of any participant under the Plan." (AR 028).

4

(2008). Because the ONEOK Plan is administered by ONEOK employees, the court considers this conflict of interest as a factor in reaching its decision. *See Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1155 (10th Cir. 2009).

"[A]s the first step towards 'interpreting an ERISA plan,' we scrutinize the 'plan documents as a whole and, if unambiguous, construe them as a matter of law.'" *Weber*, 541 F.3d at 101 (quoting *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007). In interpreting plan terms, we "consider the common and ordinary meaning as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean." *Id.* (quoting *Admin. Comm. Of Wal-Mart Assoc. Health and Welfare Plan v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2008)).

If the language of the plan is ambiguous, then the court "must take a hard look and determine" whether the plan administrator's interpretation was "arbitrary in light of its conflict of interest." *Id.* (citing *Fought*, 379 F.3d at 1008). The court should "'typically consider whether: (1) the decision was the result of a reasoned and principled process, (2) is consistent with any prior interpretations by the plan administrator, (3) is reasonable in light of any external standards, and (4) is consistent with the purposes of the plan.'" *Id.* (citing *Flinders*, 491 F.3d at 1193); *see also Geddes v. United Staffing Alliance Emp. Med. Plan*, 469 F.3d 919, 929 (10th Cir. 2006).

### III. Legal Analysis

ONEOK articulated its final denial of Arnold's claim in the "ONEOK LTD Appeal Committee Determination." (Dkt. #16-5; AR 148). ONEOK denied Arnold's benefits on the sole grounds that he did not have a Total Disability within the meaning of the Plan. (AR 152). Section

5

2.30 of the Plan defines Total Disability and has four clauses, each separated by a semicolon. (AR 011-12). Part (a) states that in the first 24 months of disability a successful claimant must show that he is unable to complete any job at the company. Part (b) states that after that 24 month period, a claimant must demonstrate that he is unable to perform any occupation at all, and that he would qualify for disability under the Social Security Act. The third clause, which is not labelled, allows a claimant to seek reconsideration of a denial of Social Security Disability. The fourth clause, also not labelled, indicates that "if the Social Security Administration denies disability benefits after reconsideration, Total Disability shall be deemed not to exist, and Disability Benefits under the Plan will be denied and terminated." (AR 012).

ONEOK concluded that the third and fourth clauses apply to both clause (a) and (b) of the Policy. (AR 151-52). Arnold argues that they apply only to clause (b) but not to clause (a). By its language, clause (a) establishes a phase that lasts for the first 24 months of disability, during which time a claimant qualifies for benefits if his impairment "can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than six (6) months (*with such expectations to be determined by the Committee*), and renders a Participant unable to perform *any job within the Company* which the Participant has the ability to perform with such a disability." (AR 011) (emphasis added). During phase (a) the ONEOK LTD Committee is explicitly charged to determine the expected duration of the disability. The LTD Committee is also implicitly charged with determining whether the disability is severe enough to prevent a claimant from undertaking any job within the company because no other body is given authority to make this determination. In this case, the LTD Committee did in fact make that determination. (*Id.*; see also AR 111). When a claimant applies for Social Security Disability benefits, the Social Security Administration will

6

determine whether he is capable of either returning to his former job, or undertaking any other work that exists in the national economy. *Thompson v. Sullivan*, 987 F.2d 1382, 1487 (10th Cir. 1993). At no point in its analysis does the Social Security Administration ever attempt to determine whether a claimant can perform "any job within the company" where he was previously employed. *See* 20 C.F.R. § 404.1520(f).

Clause (b) establishes a second phase that begins after the first 24 months of disability. During this time the claimant is eligible for benefits if he is unable "to perform each and every duty of any occupation that qualifies the Participant for disability benefits under the Social Security Act." (AR 012). Phase (b) creates a standard for disability under the Plan which is synonymous with standard Social Security Disability. This clause does not, however, require the claimant to have been approved for SSD.

The third and fourth clauses of this Section 2.30 of the Plan are separated from the first two by semicolons. This organizational structure, by itself, is ambiguous as to whether the third and fourth clauses are meant to apply to only phase (b), or both to phase (a) and (b). The court, however, is to read the plan "as a whole," and when this section is read as a whole it eliminates any ambiguity. The third and fourth clauses address the claimant's application for Social Security benefits and the consequences of being denied those benefits. The Plan states in clause 4 that if the "Social Security Administration denies disability benefits after reconsideration, Total Disability shall be deemed not to exist, and Disability Benefits under the Plan will be denied and terminated." It is not logical for clause 4 to cause a termination of plan benefits during the first 24 months of the Plan because the trigger for clause 4 (denial of disability by the Social Security Administration) is not tied to the definition of Total Disability during the first 24 months (inability to do any job within the company,

7

as determined by the LTD Committee). This court is not alone in reading the Plan in this manner, ONEOK itself adopted this interpretation of the Plan in the Memorandum initially approving Arnold's disability. ONEOK stated: "[c]ontinuation of benefits from the Plan depends upon his remaining disabled, *and after two years*, upon [Arnold] being approved for social security disability benefits." (AR 111) (emphasis added).

The LTD Appeals Committee also found that clauses three and four must be read in conjunction with Section 5.1 of the Plan which provides that a claimant must "timely" and "promptly" apply for reconsideration if the Social Security Administration denies his application for benefits. (AR 014). This section says nothing about when the initial application for benefits is to be made. Under phase (b) a claimant must qualify for SSD to receive benefits after the first 24 months of disability, but it does not follow that therefore he must also qualify for SSD during the first 24 months to receive Plan benefits during that period. A "timely" and "prompt" application could thus be any application that makes the claimant eligible for benefits in phase (b). The Appeals Committee's argument here is thus unavailing.

When the terms of a plan are unambiguous, the court interprets them as a matter of law. *Weber*, 541 F.3d at 101. The court concludes that the terms of the Plan are unambiguous. A reasonable person in the position of the plan participant would logically read the Plan as a whole and determine that there is no reason that a denial of Social Security Disability would mean that he was unable to perform any job within ONEOK under phase (a). SSD determinations and phase (a) determinations follow different criteria. A reasonable Plan participant would understand the Plan to mean that only during phase (b), when the Plan explicitly requires the plaintiff to meet SSD requirements, could his benefits be denied if he did not qualify for SSD. The court is cognizant of

the conflict of interest that ONEOK faces interpreting its own Plan and paying out any benefits that arise thereunder. Examining the plan as a whole and ONEOK's conflict of interest, the court finds that ONEOK arbitrarily and capriciously interpreted the plan terms to exclude coverage for Arnold during the first 24 months of his disability.

Alternatively, the court finds that if the Plan terms are ultimately determined to be ambiguous, ONEOK's interpretation was arbitrary and capricious. When plan terms are ambiguous, a court should typically examine "whether: (1) the decision was the result of a reasoned and principled process, (2) is consistent with any prior interpretations by the plan administrator, (3) is reasonable in light of any external standards, and (4) is consistent with the purposes of the plan." *Weber*, 541 F.3d at 101. With regard to the first factor, the court concludes that ONEOK's decision was the result of a reasoned and principled process. With regard to the second factor, however, the decision was inconsistent with ONEOK's prior interpretation of the requirements for continuing benefits eligibility listed in the Memorandum approving Arnold's disability on December 10, 2004. (AR 111). With regard to the third factor, the denial of benefits was inconsistent with the external standard for disability used by the SSA because the SSA ultimately found Arnold to be disabled and awarded him benefits. With regard to the fourth factor, the court finds that ONEOK's interpretation was not consistent with the purposes of the Plan. The purposes of the Plan include the provision of disability benefits for the first 24 months to claimants who could not perform any job within the company, not merely to claimants who could do no job in the national economy. Thus ONEOK's interpretation of the Plan, denying benefits during the first 24 months to a claimant who could not demonstrate to the SSA that he was incapable of performing any job in the national economy, is

inconsistent with the purposes of the Plan. Therefore, ONEOK's interpretation of the Plan was arbitrary and capricious whether or not the terms of the plan are ambiguous.

## IV. Conclusion

For the reasons set forth above, the Court orders that Arnold's disability benefits be retroactively reinstated for the period from their termination until the conclusion of the 24 month phase (a) period outlined in the Plan. Because this appeal concerns only the Committee's determination on Arnold's eligibility for Plan benefits during the first 24 months of his disability, this court remands the issue of his eligibility for benefits after those 24 months to the Committee so that administrative remedies may be exhausted and an Administrative Record developed.[4]

DATED this 28th day of February, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

---

[4] The LTD Committee made no finding in the Administrative Record regarding Arnold's eligibility during phase (b). There is also nothing in the Administrative Record addressing Arnold's approval for Social Security Disability benefits by an Administrative Law Judge, and what effect that may have on Arnold's eligibility for Plan benefits. Thus it is necessary for the LTD Committee to consider Arnold's phase (b) eligibility before this Court can exercise its reviewing jurisdiction over his eligibility for benefits after the first 24 months of disability.